NICHOLS and another *against* KETCHAM, Sheriff, &c.

Where an execution creditor bids at the sheriff's sale, and the goods are knocked down to him, the sheriff may lawfully deliver the goods, without receiving the money.

Where a sheriff had so sold the property of the debtor to his creditor, as the highest bidder, and delivered it, without receiving the money; and the judgment and execution were afterwards set aside as fraudulent and void, and the sheriff directed to apply the monies collected on that execution, to satisfy other executions in his hands; and the sheriff, not having actually received the money, returned *nulla bona*, &c. to an execution delivered to him prior to the order of the Court, setting aside the other execution: *Held*, that the sheriff was not liable to an action for a *false return*.

THIS was an action on the case brought against the defendant, as sheriff of *Dutchess* county, for a false return to a *fieri facias* against *John Frear*, at the suit of the plaintiffs. The declaration contained several counts, which were in substance, 1. That the defendant levied on sufficient goods, &c. of *Frear*, by virtue of the *fieri facias* in favour of the plaintiffs, to satisfy the execution, and that he has falsely returned *nulla bona*, &c. 2. That the defendant levied on sufficient goods, &c. of *Frear*, to satisfy the execution; but incautiously and carelessly suffered them to be rescued and taken away out of his custody, and then falsely returned *nulla bona*, &c. 3. That between the delivery of the execution to the defendant, and the return day thereof, *Frear* had goods and chattels, &c. whereof the defendant might and ought to have made and collected the amount of the execution; but the defendant would not levy and collect the amount, and falsely returned *nulla bona*, &c. The defendant pleaded the general issue. The cause was tried at the *Dutchess* Circuit, in *April*, 1820, before Mr. Justice *Van Ness*. Before the plaintiffs' execution was delivered to the sheriff, the property of *Frear* had been sold by him on an execution in favour of *George B. Evertson*. The personal property was sold on the 2d of *July*, for 6,076 dollars and 99 cents, and the real estate on the 31st of *July*, 1819, for 114 dollars. The plaintiffs' execution was issued on a judgment in the Court of Common Pleas of *Dutchess*, and was received by the sheriff on the 4th of *August*, 1819, returnable the second *Monday* of *October* following. The amount of the ex-

ecution of *Evertson*, (11,618 dollars 18 cents) was more than sufficient to absorb the whole property of *Frear*. But it appeared, that on the 17th of *August*, 1819, a rule had been obtained in this Court, ordering the execution of *Evertson* against *Frear* to be set aside, and a perpetual stay of execution in that cause; and that the monies collected on that execution, by the sheriff of *Dutchess* county, be paid and applied by the sheriff, in satisfaction of such other executions as the said sheriff had in his hands, according to their legal priority: and the object of the present suit was to compel the sheriff to account for and apply the proceeds of the sale under *Evertson's* execution, to the payment of the plaintiffs' execution. The rule was duly served on the defendant, on the 19th of *August*, 1819. It appeared, that the whole amount of the proceeds of the sales on *Evertson's* execution, exceeded the amount of all the other executions against *Frear* in the sheriff's hands. But the defendant refused to pay the plaintiffs' execution, on the ground, that the proceeds of the sale under *Evertson's* execution, had not been received by him, except so far as he was bound to apply the same in satisfaction of prior executions. The defendant proved, by *Peter Everitt* and *George B. Evertson*, that though by the written notice and conditions, the sale under *Evertson's* execution was to be for cash; yet *Evertson*, the plaintiff in that execution, instructed the sheriff to receive the bids of *Everitt* and one *Gidley*, as cash; that *Everitt* purchased, at the sale, to the amount of 2,600 dollars, and *Gidley* to the amount of 658 dollars and 34 cents, which, by agreement, were to be considered as so much cash, as between the sheriff and *Evertson*, the creditor. After the sale and delivery of the goods, *Everitt* retained articles to the amount of 560 dollars, and delivered the residue to *Evertson*. It appeared that a large iron stove, belonging to *Frear*, was not sold with the rest of the personal property, being claimed as a fixture.

After notice of the rule for setting aside the execution of *Evertson*, *Everitt* promised to pay to the defendant the amount of the goods retained by him, but refused to pay for those delivered to *Evertson*; who, also, promised to set-

NEW-YORK, May, 1821.

NICHOLS v. KETCHAM.

tle with the defendant for the amount he had received; but though repeatedly called on, afterwards, they neglected to pay the defendant. But they stated, in their evidence, that they would have paid the money, if pressed, rather than be sued.

The jury found a verdict for the plaintiffs, for 374 dollars, subject to the opinion of the Court on a case; and they found the value of the stove to be 45 dollars.

*P. Ruggles*, for the plaintiffs. 1. The money in the sheriff's hands, being the proceeds of the sale of the property of *Frear*, was liable to the plaintiff's execution. (12 *Johns. Rep.* 220. 395. 1 *Cranch*, 117. 3 *Caines*, 84. *Doug.* 231.) After the execution of *Evertson* was set aside, the money unquestionably belonged to *Frear*, and if it had been brought into Court, it would have been ordered to be applied to satisfy the executions in the sheriff's hands.

2. The defendant cannot avail himself of prior executions without showing judgments to support them. (2 *Johns. Rep.* 46. 1 *Ld. Raym.* 733. 5 *Burr.* 2631.)

3. But if he has shown such judgments, still he is liable in this action; for having sold the goods for cash, and delivered the property to the purchaser, he cannot allege that he has not received the money; more especially, after the order of the Court, requiring him to apply it to the plaintiffs' execution. He cannot avail himself of his own neglect of duty. (9 *Johns. Rep.* 46. 15 *Johns. Rep.* 456, 457.) After the sheriff has taken goods in execution, he must return, either that the goods are in his hands, remaining unsold for want of buyers; or that he has the money in Court. He cannot give credit; nor can he allege that he has not the money in his hands, nor any property of the debtor with which to pay the plaintiffs' execution. The declaration charges him with having property of *Frear* in his power sufficient to satisfy the execution of the plaintiffs. He might as well return *non est inventus* to a *ca. sa.*, when he has the defendant in his actual custody.

Again, an action of assumpsit for money had and received,

would lie in this case, for the money. (11 *Johns. Rep.* 464. 2 *Saund.* 47. *n.* 1. 12 *Johns. Rep.* 207. 13 *Johns. Rep.* 255.)

*J. Tallmadge*, contra. 1. The evidence does not support the declaration. The sheriff must have the goods on which he levies within his power and view. (*Cresson* v. *Stout*, 17 *Johns. Rep.* 116.) It is admitted, that money in the *actual possession of the defendant*, may be taken by execution; but not where it is in the hands of a third person; and it is on this distinction that the case cited from 12 *Johns. Rep.* proceeds. In the case of *Turner* v. *Fendall*, (1 *Cranch*, 117.) there was a writ of error to reverse a judgment of the Circuit Court of the District of *Columbia*, on a motion against *Turner*, for the amount of money received by him on a *fieri facias*, in favour of the plaintiff, against one *T*. The sheriff defended himself, on the ground that he had an execution in his hands against the plaintiff, which he levied on the money in his possession belonging to the plaintiff on the other execution. Though it was admitted that money in the possession of the defendant might be taken in execution; yet it was held, that while it was in the hands of a third person, it was not the property of the debtor, so as to be liable to execution. It is the duty of the sheriff to bring the money into Court, in obedience to the exigency of the writ; but if he neglects to do so, the proper course is to apply to the Court for that purpose; and the money being here, the Court, on motion, will direct it to be applied in satisfaction of the second execution. In *Armistead* v. *Philpot*, (*Doug.* 231.) there was a motion for a rule on the sheriff to retain the money of the defendant in his hands, arising from an execution in which he was plaintiff, for the use of *A.* the plaintiff. In the case of *Ball* v. *Ryers*, (3 *Caines*, 84.) a similar application was made to the Court. In *Williams* v. *Rogers*, (5 *Johns. Rep.* 163.) the second execution was levied on the goods, before the sale under the first execution, and there was a motion to have the surplus monies applied to the second execution; but as the rights of assignees were interposed, the Court did not think proper, under the circumstances of the case, to interfere, though they expressed their inclination, in a proper case,

to adopt the reasoning of the Supreme Court of the U. S. in *Turner* v. *Fendal.* In *Fieldhouse* v. *Croft,* (4 *East,* 510.) the motion was for a rule to show cause why a sum of money *belonging to the defendant,* in the hands of the late sheriff of *W.*, being the surplus arising from the sale of property under a former execution, should not be paid over by him to the present sheriff. Lord *Ellenborough* said, it was a question whether a plaintiff can have execution of *money* belonging to the defendant in the hands of a third person; and he refused the motion. This case, though it has been cited for a different doctrine, perfectly agrees with the decision in *Turner* v. *Fendall,* and supports the distinction for which we contend. So, in *Willow* v. *Bull,* (5 *Bos. & Pull.* 376.) where the defendant *B.* having recovered damages against the sheriff, for improperly seizing his goods on a *distringas* against another person, the plaintiff *W.* applied for a rule on the defendant to show cause, why the sheriff should not retain the amount of the damages so recovered against him by the defendant, and pay over the same to the plaintiff, in discharge of his execution against the defendant. Sir *James Mansfield* said, considering the goods of *B.* as having been turned into money, and the money belonging to *B.*, he could see no distinction between that money so due to *B.* and any other debt due from the sheriff to him, and the motion was denied. He observed, that "if *W.* had a *lien* on the goods, that might vary the case." All the cases agree, that money belonging to the defendant in the hands of a sheriff, cannot be levied on, and paid to a plaintiff, under an execution. Here the plaintiff had acquired no legal lien. In *Lambert* v. *Paulding,* (18 *Johns. Rep.* 311.) the property had been actually levied on by the second execution; and there was legal lien. In *Knight* v. *Criddle,* (9 *East,* 48.) the sheriff had in his hands sixty pounds in bank notes, paid to him on an execution, in favour of *Criddle,* against one *S. H.*, and *Knight* moved for a rule to show cause why the sheriff should not pay over to the plaintiff, the amount of his execution against *C.* which was for a less sum. But the Court of *K. B.* refused the rule, saying, that it was an innovation on the law, which ought not to be admitted, and that the rule in *Armistead* v. *Philpot* was by consent.

There was no property in the actual possession of *F.* on which the defendant could levy the execution. The plaintiff could only apply to a Court of equity, or to this Court on motion. He cannot maintain an action against the sheriff for a false return. There is no instance of such an action being brought in such a case.

The facts must be taken as they stood, on the day on which the execution of the plaintiff was delivered to the defendant; and there was then no property of *F.* which could be taken. It is not necessary, therefore, to attempt to show that the defendant has acted correctly. If he has done wrong, he is accountable to the other creditors who had a legal *lien*, or to *F.* The present plaintiff had not, at that time, acquired any right or *lien*. The rule of equity is, that all fair creditors are equally favoured; and if a subsequent creditor, by using due diligence, has succeeded in obtaining his debt, a Court of equity will not interfere to oblige him to account for what he has received, and refund it to a prior creditor. The parties ought to be left to pursue their rights, either in a Court of equity, or by motion, to the equity powers of this Court, in regard to its own process. The action against the sheriff for a false return, is not the proper remedy.

It is objected, that the defendant ought to have shown the prior judgments, as well as the executions. But the writ or execution is a sufficient justification to the officer, in a suit against him; where the suit is against the plaintiff himself, he must show the judgment as well as the execution. (2 *Bac. Abr.* *Execution.* (P.) 6 *Johns. Rep.* 195. 7 *Johns. Rep.* 32.) It is true, that in *High* v. *Wilson*, (2 *Johns. Rep.* 46.) the Court say, that when a *stranger* sues the officer, the latter must show the judgment as well as the execution. The reason of the distinction is, that if the officer takes property in possession of the defendant, the execution is sufficient to justify him; but if he will go further and take property in the possession of a *stranger*, or third person, he must then produce a judgment, to show that he stands in the place of a *creditor* having a right to take the property of his debtor, wherever it could be found.

NEW-YORK, May, 1821.

NICHOLS v. KETCHAM.

Besides, in that case, the Court was satisfied that there was fraud.

*As* to the stove, which was not sold on the prior executions; it was fastened to the house by a pipe, &c. and comes within the definition of a fixture. (3 *East's Rep.* 38.) By an act passed the 17th of *April*, 1816, (sess. 39. ch. 177.) "spinning wheels, weaving looms, or *stoves*, placed or put up for use, in any dwelling house," are exempted from execution, or distress for rent.

*Oakley*, (A. G.) in reply. The judgment and execution of *Evertson* against *Frear*, were set aside, as fraudulent against creditors. Before it was set aside, *bona fide* executions were delivered to the defendant; and a rule was granted, ordering him to apply the money arising from the sale of *F.*'s property, under the fraudulent execution, to discharge the other executions in his hands. The sheriff wilfully disobeyed the order, and the Court refused an attachment against him, because they were executions in his hands. The only course, then, was to compel him to make a return to the plaintiffs' execution; and having returned *nulla bona*, this action was brought against him. If it cannot be sustained, the plaintiffs are without remedy, and *Evertson* will obtain the fruits of his fraudulent judgment, contrary to the express order of the Court.

It is said, that the evidence does not support the declaration. The third count is, that there was property of *F.*, in the power of the defendant, out of which the defendant might have collected the plaintiffs' execution. (15 *Johns. Rep.* 456. *Burk* v. *Campbell.*) The rule of the *English* Courts is, that *money* cannot be taken in execution; but this Court have decided, that *money*, like goods and chattels, may be taken in execution. It is true, that in the *English* Courts, application was made to the Court, in order to reach the money, because it could not be taken in execution. But this Court having once decided, that *money* may be taken, as goods and chattels, there is no necessity of applying to the equity powers of this Court, unless there are conflicting claims. As to the case of *Turner* v. *Fendell*, it is, undoubtedly, a leading case, and is in point for the

plaintiffs. In that case, it was the money of a stranger which had been received by the sheriff for the defendant. Here the property remained in *F*. It had never been changed. Suppose he had deposited his money in the hands of the sheriff, for safe keeping, would it not, constructively at least, be in the defendant's possession, and, therefore, within the principle of the Supreme Court? It would be an idle and useless ceremony, as that Court observed, for the sheriff to pay the money over to the sheriff, with one hand, and seize it with the other, under the plaintiff's execution. Where there are conflicting claims, it is the duty of the sheriff to bring the money into Court, pursuant to the command of the writ, that it may be disposed of, according to the judgment of the Court, on the respective claims. All the cases agree, that the property of a defendant may be taken by virtue of execution, wherever it can be found; and it being once established, that *money* can be taken in execution, as goods and chattels, it follows, that the sheriff may take it any where. He may run a greater risk in one case, than in another, as to proving the property to belong to the defendant; but his right to take it is the same. Here, the money arising from *Frear's* goods was in the hands of the sheriff. The Supreme Court, in *Turner* v. *Fendell*, say, that it is the duty of the sheriff to satisfy the execution, if it is in his power to do so. Can, then, a sheriff, having money of the defendant in his possession, and, also, an execution against him, pay over that money to the defendant, and return on the execution *nulla bona?* The judgment and execution of *E*. having been set aside as fraudulent, there can be no question that the property, in the meanwhile, remained in *F*.; the sheriff was bailee for him of the money; and the Court, by their order, decided that it belonged to him. Again; here was a sale for cash; a sheriff has no authority to sell on a credit; the defendant cannot be admitted to say that he has not received the money. The witnesses say, they would have paid the money, if the sheriff had pressed them for it. The defendant alleges in his defence, his own breach of duty. As to the prior executions, they cannot be set up so as to exhaust the surplus in the sheriff's hands. He might have satisfied them out of

the sums bid by *Everett* and others, or out of moneys in his hands. The Court will oblige him to apply the money in such a manner as will best subserve the rights of all parties.

The statute cited, which was made for the benefit of poor families, (18 *Johns. Rep.* 400.) shows that stoves are not considered as fixtures.

PLATT, J. delivered the opinion of the Court. It seems to me very clear, that in the mode of conducting the sale under *Evertson's* execution, and particularly in not exacting the money on bids made by *Evertson* or his agent, no blame is imputable to the sheriff. It would be unreasonable, and injurious to *debtors*, as well as *creditors*, to insist, that the creditor on the execution should advance money on his bid, when the sole object of the sale, is to put money in his pocket, by paying a debt due to him. The sale was, therefore, regular and lawful, as regards the sheriff; and he delivered the goods to the purchasers accordingly, on the 2d of *July*, 1819. On the 4th of *August* following, the plaintiffs' execution was delivered to the sheriff. At that time, it is clear, that the sheriff was under no responsibility whatever to these plaintiffs, on account of those goods. On the 17th of *August*, 1819, the execution of *Evertson* was set aside; and a copy of the rule for that purpose was served on the sheriff on the 19th of *August;* but that order did not invalidate the prior sale under that execution. *Fieri non debet, factum valet.* But this Court ordered the sheriff to pay over, and apply the "moneys collected on that execution, in satisfaction of other executions in his hands, according to their legal priority." It is certain, that the moneys had not then been "collected" by the sheriff, on that sale to *Evertson* and *Everitt*. On the contrary, it had not been contemplated by the parties, that those moneys were to be paid to the sheriff. In the regular exercise of his official duty, that matter had been otherwise adjusted between them. It seems to me, therefore, that the rule for setting aside that execution, could have no force or effect, *as against the sheriff;* except as to the moneys *actually received by him*, under that execution.

That rule (setting aside the execution) is not to be regarded as a mandate to the sheriff, to pursue measures to recover the price of the goods sold under *Evertson's* execution. We had no power to compel such a procedure. And it is important to remark, that the execution in favour of these plaintiffs issued not from this Court, but from the Common Pleas of *Dutchess;* and it was not the office of this Court to give any special authority or instructions to the sheriff, as to the mode of executing the process of that Court. Suppose, then, the purchasers (*Everitt* and *Evertson*) had refused to pay the sheriff for those goods ; I confess I am at a loss to discover, what right of action he had, as sheriff, or otherwise, to compel payment. It seems to me, the only remedy would have been, either by an action on behalf of *Frear*, the defendant in that execution, or by a bill in Chancery, on behalf of the other creditors.

But if the sheriff might have sustained an action, it does not follow, that he was bound to bring a suit. Though by skilful address and negotiation, he might have induced the payment of those moneys, so that this execution might attach on them; it seems to me, to form no part of his regular official duty.

I think he would have had a right to say to these plaintiffs, "I sold *Frear's* property strictly according to my duty, in obedience to *Evertson's* execution ; and I have, also, regularly accounted to him, as the judgment creditor, having the oldest execution, for the whole avails of that sale. All this was done without any notice, or suspicion on my part, that you ever meant to contest the validity of that judgment and execution. Now, I am *functus officio*, in regard to what was rightfully done by me under that execution. If *Everitt* and *Evertson* ought to account to you for those moneys, seek your own remedy against them."

But even admitting, that it was the duty of the sheriff to have sued for those moneys, yet if the money *never was actually paid* to him, he cannot be legally charged for a false return of *nulla bona;* because it does not appear, that there was any property of *Frear* in the hands of those purchasers, on which he could have levied the plaintiff's execution.

NEW-YORK, May, 1821.

NICHOLS v. KETCHAM.

Suppose the sheriff had proved the utter insolvency of those purchasers, (*Everitt*, *Evertson*, and *Gidley*,) or that he had sued them with due diligence and failed to recover, would the amount of their bids be deemed *money in his hands*, so as to falsify this return of *nulla bona?* I think not.

If any action lies against the sheriff for those moneys, it must be a special action on the case, for connivance with *Evertson* and *Everitt*, or for negligence in not suing for those moneys. He certainly had no right to levy the plaintiffs' execution on any money in the hands of *Evertson* or *Everitt*, although it be admitted that they ought to pay it.

It appears, that *prior* valid executions in the sheriff's hands were sufficient to absorb all the amount of sales, excepting the bids of *Gidley*, *Everitt*, and *Evertson*, viz. *Gidley's* bid, 658 dollars 34 cents, *Everitt's* bid, 560 dollars, and *Evertson's* bid, 702 dollars 21 cents, which were not paid when this execution was returned.

My conclusion is, that the evidence does not support either of the counts in the declaration, except as to the *stove*. I infer from the evidence, and the verdict, that the sheriff neglected to sell it; and I have no doubt it was *personal property*, and not a part of the store in which it stood. We are, therefore, of opinion, that the amount of the verdict be reduced to 45 dollars, according to the special finding of the jury as to the stove.

Judgment accordingly.